Filed 06/13/25



VERMONT SUPERIOR COURT
Rutland Unit
83 Center St
Rutland VT 05701
802-775-4394
www.vermontjudiciary.org



CIVIL DIVISION
Case No. 24-CV-04608

| The Rutland Hospital, Inc dba Rutland Regional Med. Ctr. v. Green Mountain Care Board |
|---|

## DECISION ON THE MERITS

The Rutland Hospital, Inc. d/b/a Rutland Regional Medical Center ("Hospital") appeals pursuant to V.R.C.P. 74 and 18 V.S.A. § 9456(h)(2)(B)(ii) from an order of the Green Mountain Care Board ("Board") enforcing the Hospital's fiscal year 2023 ("FY23") budget as established by the Board. The Board's enforcement order found that the amount of revenue the Hospital had earned during FY23 from providing care to patients exceeded the mandatory revenue cap set forth in the budget for that fiscal year. As a corrective remedy for that violation, the Board reduced the rates that the Hospital can charge commercial health insurance companies during two upcoming budget cycles, a change specifically calculated to decrease the Hospital's allowable revenues over those cycles in an aggregate amount equal the FY23 revenue overage.

The proceedings that led to the Board's enforcement order were informal, undertaken as part of the public hearing process that also led to the Board's establishment of the Hospital's budget for fiscal year 2025. The Hospital objected during those proceedings, arguing that it would suffer financial harm and that the Board's enabling statute required the Board to take budget-enforcement actions only after affording the Hospital a formal adjudication consistent with the Vermont Administrative Procedure Act ("VAPA"), 3 V.S.A. §§ 800-49. The Board rejected those arguments, reasoning that since past revenue overages may be remedied through rate reductions contained forthcoming budgets, the Hospital was merely due the type of public hearing that the Board ordinarily conducts when establishing hospital budgets. The Board further reasoned that since hospitals' compliance with Board-established budgets is mandatory, the Hospital had no right to any FY23 revenue surplus, and thus, lacked any protected right or interest sufficient to warrant a formal adjudication. The Hospital appealed the Board's enforcement action to this Court, on procedural and substantive grounds.

For the following reasons, the decision of the Board is REVERSED and the matter is REMANDED for further proceedings consistent with this decision

### Background

I.  Statutory and Regulatory Framework

The Board was created in 2011 as an independent board of the State and is charged to "reduc[e] the per-capita rate of growth in expenditures for health services in Vermont across all payers while ensuring that access to care and quality of care are not compromised." 18 V.S.A. § 9372(2). To that end,

the Board is authorized to perform multiple functions with regard to the health care industry, including both the establishment and enforcement of the operating budgets of each of the non-governmental hospitals in Vermont. *See In re Nw. Med. Ctr. Fiscal Year 2024*, 2024 VT 39, ¶¶ 2-5; 18 V.S.A. §§ 9375(b)(7), 9451-58.

Budget establishment is a process that the Board must perform annually. *See* 18 V.S.A. § 9456(d)(1); Hospital Budget Review, § 3.105, Code of Vt. Rules 80 280 003 [hereinafter "GMCB Rule"], http://www.lexisnexis.com/hottopics/codeofvtrules. Beginning in July of each year, the Board reviews proposed budgets submitted by each hospital, which set forth proposed expenditures, rates, and allowable revenues for the upcoming fiscal year. *See id.* § 3.203. Thereafter, "the Board may hold public hearings concerning the hospitals' budgets," except that the four largest hospitals in Vermont, as measured by patient revenue from the previous year, "shall not be exempt from the public hearings." *Id.* §§ 3.302, 3.304(c). At such hearings "[t]he Board may require hospitals . . . to provide testimony and respond to questions raised by the Board or the public." *Id.* § 3.302. The Board must finally determine each hospital's budget by September 15 and issue a written decision to that effect by October 1st, the start of the fiscal year. *See id.* § 3.307; 18 V.S.A. § 9456(d)(1).

Approved hospital budgets are mandatory and enforceable by the Board. *See* 18 V.S.A. § 9456(d)(1) ("Each hospital shall operate within the budget established under this section."). In the event the Board finds that a hospital has failed to perform in accord with its budget, the Board "may maintain an action in the Superior Court of the county in which the hospital is located to enjoin, restrain, or prevent such violation." *Id.* § 9456(h)(1). The Board also may impose, "[a]fter notice and an opportunity for hearing . . . a civil administrative penalty of not more than $40,000.00," for violations that are not continuing in nature (and higher penalties for those that are continuing). *Id.* § 9456(h)(2)(A). Additionally, after affording the hospital "notice and an opportunity to be heard," the Board may issue an order requiring a hospital to cease the violation or "take such corrective measures as are necessary to remediate the violation or deviation and to carry out the purposes of [18 V.S.A. chapter 221, subchapter 7]." *Id.* § 9456(h)(2)(B)(i)(I)-(II).

Each of these statutory enforcement tools were enacted prior to the Board's creation in 2011.[1] In 2012, the Legislature directed the newly-created Board to engage in formal notice-and-comment rulemaking and adopt rules to implement these statutory powers. *See* 2011, Act No. 171 (Adj. Sess.), § 40a (eff. May 16, 2012). Those rules, promulgated in January of 2013, prescribe factors that the Board must consider when reviewing a hospital's actual performance relative to its budget, and when deciding whether to take—and if so, how to take—an enforcement action. When reviewing a hospital's performance relative to budget, the Board "shall" consider, *inter alia*: the amount of variation between the hospital's actual and budgeted revenues; the financial position of the hospital relative to others and the health care system as a whole; and the ability of the hospital to limit revenues by limiting patient care and services, consistent with the fundamental obligation to provide appropriate care for all patients. *See id.* § 3.401(a)(1)-(5). If, as a result of such review, the Board concludes "that a hospital's performance has varied substantially from its budget," then the Board must give written notice to the hospital that explains the Board's findings and describes the factors that the Board considered. *Id.* § 3.401(b).

---

[1] *See* 1991, Act. No. 160 (Adj. Sess.), § 13 (adding what is now 18 V.S.A. § 9456(h)(1)); 2003, Act. No. 53, § 24 (adding what is 18 V.S.A. § 9456(h)(2)(A)); 2009, Act. No. 128 (Adj. Sess.), § 23 (adding 18 V.S.A. § 9456(h)(2)(B)).

That initial notice serves to commence the running of a 30-day period in which the hospital has an opportunity to apply for a retroactive, upward adjustment of its allowable annual revenues or expenditures. *See id.* § 3.401(e); 18 V.S.A. § 9456(f). The Board may grant such an adjustment, upon the hospital's "showing of need based upon exceptional or unforeseen circumstances," 18 V.S.A. § 9456(f), and "taking into account the factors set forth in [GMCB Rule § 3.401(a)]." GMCB Rule § 3.401(b). If such an adjustment is granted, the Board may allow "a hospital to retain surplus funds," or "retain a percentage of surplus funds generated primarily by volume in excess of that projected for a particular year." *Id.* § 3.401(c)(4), (c)(5).

The Board may also deny an application for a retroactive budget adjustment, and instead take remedial enforcement actions. For example, the Board may take corrective action by "changing hospital rates or prices by the amount of net revenues exceeding the budgeted net revenues" in a current budget, or by "changing the net revenue and/or expenditure levels of future budgets." *Id.* § 3.401(c)(1), (c)(2). Indeed, the rules state that "in the course of establishing a new budget," "[a]djustment methods based on past performance may be applied by the Board . . . and may be imposed over a multiyear period." *Id.* § 3.401(d).[2] If a hospital fails to apply for a retroactive budget adjustment within 30 days of the Board's notice of a budget variance, the Board's rules authorize the "use any enforcement action set forth in 18 V.S.A. § 9456(g)-(h) that is warranted under the circumstances." *Id.* § 3.401(e).

To be clear, however, the Board's rules do not state that if the Board alleges a substantial budget deviation, the Board then enjoys exclusive and unreviewable discretion to take an action depriving a hospital of such funds. Nor do the rules indicate that, upon an allegation of a substantial revenue deviation, the surplus then necessarily belongs to the Board, or any other entity besides the hospital. Notably, the Board's rules also do not expressly specify the hearing procedures that must be undertaken when the Board takes budget-enforcement actions.

II. Procedural Background

In March of 2021, on the view that "no meaningful regulatory action" was being taken in situations where hospitals had received greater annual revenues than forecasted and budgeted, the Board released a new "Policy on Hospital Budget Enforcement." *See* Record on Appeal (filed May 7, 2025) [hereinafter "A.R."], at 1-2.[3] The two-page Policy indicates that it was adopted "to provide guidance regarding enforcement of hospital budgets," and "to help provide hospitals with clear expectations concerning the application of the [Board]'s enforcement mechanisms." A.R. at 1-2. It provides that if a hospital's revenue performance has differed substantially from its budget, the Board may take actions, including,

---

[2] The Board and the Hospital agree that GMCB Rule § 3.401 mistakenly contains two successive subsections that are designated "(c)," and that the second of these should have been designated "(d)." To avoid confusion, the Court refers to "§ 3.401(d)" when referring to the second subsection that is designated "(c)" in Rule § 3.401 as promulgated.

[3] The administrative record filed in this case consisted of approximately 2,700 pages, but none were individually marked or stamped with page numbers. However, a table of contents accompanied the record, listing the putative page number of the first page of each separate document included in the record. Thus, citations made herein to particular page numbers of the record are based off of the Board's table of contents.

including, reducing the hospital's rates, or using the hospital's revenue deviation as grounds to "adjust the hospital's budget in one or more subsequent years." *Id.* The Policy also provides that when taking such enforcement actions, the Board "will afford the hospital an opportunity for a hearing and will require a hearing if it deems one necessary." *Id.* at 1.

On September 30, 2022, the Board issued an order establishing the Hospital's budget for fiscal year 2023. A.R. at 11-22. That fiscal year ended on September 30, 2023, and on June 5, 2024, the Board provided the Hospital with notice that the Hospital's year-end net patient revenue for FY23 had exceeded the budgeted revenue amount by $11,064,861, or approximately 3.5%. A.R. at 157-58. The notice observed that hospital budgets are mandatory, and included a reference and link to the Board's March 2021 Enforcement Policy. The notice also requested that the Hospital "be prepared to address potential enforcement actions at [the Hospital]'s FY25 hospital budget hearing," and informed the Hospital of its right to seek a retroactive budget adjustment under 18 V.S.A. § 9456(f). *Id.*

The Hospital's initial written response, dated June 12, 2024, cited numerous factors to explain or justify the FY23 revenue overage. A.R. at 159-186. On July 3, 2024, the Hospital filed an application for a retroactive upward adjustment of its FY23 budget, largely reiterating the points made in its initial response. *Id.* at 631-633. Separately, in early July of 2024, the Hospital submitted its proposed budget for fiscal year 2025. *Id.* at 187-630. In August of 2024, the Board commenced informal public hearings on the proposed budgets of all the hospitals within the Board's jurisdiction. *Id.* at 648-1462. The Board solicited and heard from its own professional staff and from private economic and health care industry consultants, addressing the various budget proposals and the financial condition of the health care industry. The Board also took public comments, as well as testimony from representatives of several hospitals, including the Hospital.

In early September, shortly after the Board's staff first released their recommendation that the Board take a remedial enforcement action with respect to the Hospital's $11 million overage for FY23—and do so by reducing rates that the Hospital may charge commercial health insurers during fiscal years 2025 and 2026—the Hospital began filing a series of written objections. A.R. at 1587-1589, 2393-2412, 2732-2753. There, citing 18 V.S.A. § 9456(h)(2)(B) and several VAPA provisions, the Hospital asserted that the Board had violated the VAPA, "resulting in an unlawful hearing to determine [the Hospital]'s legal rights and obligations." *Id.* at 2747; *see also id.* at 2748 ("The enforcement action against [the Hospital]'s FY23 budget variance is a 'contested case' because it involves the determination of [the Hospital]'s legal rights and obligations after an opportunity for a hearing is required by law."); *id.* at 2733 ("the requirements under VAPA must be followed"). The Hospital also claimed "significant prejudicial impact" and "financial harm," since "[t]he enforcement action imposes approximately $5.5 million in cuts" in each of two successive budget cycles. *Id.* at 2751.

On October 10, 2024, the five-member Board, in a 3-2 decision, issued a final order denying the Hospital's request for a retroactive upward adjustment of the FY23 budgeted revenue limit and imposing a corrective reduction in the rates the Hospital may charge commercial payers during FY25 and FY26. *Id.* at 2754-2769. Those rate reductions effectively obligate the Hospital to provide patient care over those budget cycles, but without charging commercial health insurers for such care, to an extent worth about $11 million, the same amount of the revenue overage for FY23.

Notably, the Board's Order began with a discussion of the legal framework, including a summary of the March 2021 Enforcement Policy. A.R. at 2755-2756. There, the Board directly quoted the Policy

provision stating that the Board will afford "an opportunity for a hearing" to any hospital alleged to be in substantial violation of its budgeted revenue limit. *Id.* at 2756. The Order also included findings, the majority of which were supported by citations to the public hearing testimony solicited by the Board. Other findings were derived from public comments, findings made in other Board proceedings involving commercial health insurers, and from research performed by an executive branch agency of the State.

Next, after setting forth substantive legal conclusions, the Board's Order concluded by addressing the Hospital's procedural arguments. *Id.* at 2767-2768. The Board defended its decision to address, contemporaneously and together, the Board's actions on both budget-establishment and budget-enforcement by observing that GMCB Rule 3.401(d) gives the Board the authority to impose corrective actions for past revenue deviations "in the course of establishing a new budget" and "over a multiyear period." The Board further stated that its corrective action was not a "contested case" that triggered the VAPA's requirements. The Board quoted the full statutory definition of that term: "a proceeding 'including but not restricted to rate-making and licensing, in which the legal rights, duties, or privileges of a party are required by law to be determined by an agency after and opportunity for a hearing.' 3 V.S.A. § 801(a)(2)." A.R. at 2768. Significantly, however, the Board did not address whether it was "required by law" to afford the Hospital a formal adjudication consistent with the VAPA. Instead, the Board reasoned that its enforcement action "concerns no new identifiable legal right, and [the Hospital] provides no explanation of any right or privilege that it believes is required by law to be determined by this Board." *Id.* Additionally, "[the Hospital] certainly does not have the legal right to deviate from our budget orders." *Id.*

Two Board Members, Jessica Holmes and Robin Lunge, filed a one-page dissenting opinion. *Id.* at 2769. They agreed with the Hospital that the FY23 revenue overage was primarily driven by an unexpectedly high volume of patient utilization, and observed that the Hospital is prohibited by federal law "from turning away patients who come to the emergency room." However, they did not address the majority's rejection of the Hospital's procedural arguments.

On November 4, 2024, the Hospital filed a notice with the Board indicating that the Hospital was appealing the Board's enforcement Order to this Court. *Id.* at 2774. Following merits briefing, the Court heard oral argument on May 12, 2025.

<u>Standard of Review</u>

This Court's review of budget-enforcement orders issued pursuant to 18 V.S.A. § 9456(h)(2)(B) "shall be on the record as developed by the Board in the administrative proceeding and the standard of review shall be as provided in 8 V.S.A. § 16." 18 V.S.A. § 9456(h)(2)(B)(ii). Generally speaking, a court performing review pursuant to 8 V.S.A. § 16 is obligated to grant the administrative agency "a great deal of deference." *In re Cent. Vt. Med. Ctr.*, 174 Vt. 607, 608 (2002) (mem.). For example, the agency's factual findings will not be set aside "unless clearly erroneous." *Id.* (quotation marks omitted). "[T]he agency's interpretations of statutory provisions that are within its particular area of expertise will not be disturbed . . . absent compelling indication of error." *In re Prof'l Nurses Serv., Inc.*, 164 Vt. 529, 532 (1996). Similarly, the reviewing court "presume[s that] an agency's interpretation of its regulations is correct, and the challenging party must show a compelling indication of error to overcome this presumption." *Cent. Vt. Med. Ctr.*, 174 Vt. at 609. "'Absent a clear and convincing showing to the contrary, decisions made within the expertise of [the agency] are presumed to be correct, valid and reasonable.'" *In re Prof'l Nurses Serv. Application For a Certificate of Need*, 2006 VT 112, ¶ 12, 180 Vt. 479 (quoting *Prof'l Nurses Serv., Inc.*, 164 Vt. at 532)).

<u>Analysis</u>

The Hospital makes two primary procedural arguments to challenge the Board's Order. First, the Hospital argues that the Order is a "contested case" under 3 V.S.A. § 801(b)(2) because 18 V.S.A. § 9456(h)(2)(B)(ii) provides that any order issued under § 9456(h)(2)(B) "shall" be issued "after notice and an opportunity to be heard." The Hospital then maintains that, because this was a contested case, the VAPA's formal adjudication requirements were triggered, *see* 3 V.S.A. § 809-10, and therefore the Board's decision to proceed informally constitutes "unlawful procedure." 8 V.S.A. § 16(3).

Second, the Hospital argues that it has a right to keep the revenues it has earned, and the Board's view—that a hospital alleged to be in violation of an established budget has no protected rights to such revenues sufficient to trigger the VAPA's "contested case" procedures—ignores the Board's own rules specifying the criteria the Board must consider when deciding whether and by what manner the Board may order a corrective enforcement action. As such, the Hospital asserts that the Board's Order affects the Hospital's "legal rights" for purposes of the "contested case" definition at 3 V.S.A. § 801(b)(2).

The Court addresses these two arguments in turn.

I.   18 V.S.A. § 9456(h)(2)(B)(ii)'s Requirement For "An Opportunity To Be Heard" Makes The Board's Enforcement Order A "Contested Case."

The Court agrees with the Hospital's primary argument that 18 V.S.A. § 9456(h)(2)(B)(ii)'s requirement for "notice and an opportunity to be heard" makes the Board's Order a "contested case." "Contested case" is another term for "adjudication," and is expressly defined in the VAPA as "a proceeding, including but not restricted to rate-making and licensing, in which the legal rights, duties, or privileges of a party are required by law to be determined by an agency after an opportunity for hearing." 3 V.S.A. § 801(b)(2). The well-established test for whether a particular agency action constitutes a contested case, therefore, is whether the "law"—*i.e.*, a statutory scheme or the agency's implementing regulations—requires the legal rights, duties, or privileges of a party to be determined by the agency after an opportunity for a hearing. *See In re State Airport Hangar Lease Disputes*, 2025 VT 21, ¶ 30 n.9, 2025 WL 1273006 (appeals to State transportation board under 19 V.S.A. §§ 5(d)(4) and (d)(6) "are not contested cases because there is not an opportunity for a hearing at the [agency] level"); *Moran v. Vt. State Retirement Bd.*, 200 Vt. 354, 358 (2015) (appeal of benefits denial taken to State retirement board is a contested case because statute authorizing appeal requires board to give claimant a hearing to determine whether he qualifies for benefits); *Widschwenter v. Bd. of Bar Examiners*, 151 Vt. 218, 218-19 (1989) (because board was not required by its rules to conduct a hearing to review a bar applicant's request for a waiver of certain application requirements, board's action on request did not constitute a contested case); *In re Marble Savings Bank*, 137 Vt. 123, 124-25 (1979) (petition filed with banking commissioner to open a new bank branch was not a contested case because statute gave commissioner discretion whether to hold hearing on petition); *Reed v. Dep't of Pub. Safety*, 137 Vt. 9, 10-11 (1979) (per curiam) (state employee's grievance on his non-promotion was not a contested case because neither statute nor departmental regulations required hearing on such grievance); *Vt. Nat. Res. Council v. Expanded Downtown Bd.*, No. 2007-482, 2008 WL 3878503, at *1 (Vt. May 2008) (unpub. mem.) (statute affording "'an opportunity for the public to be heard'" on a town's application seeking a "growth center designation" from State board is "reasonably understood to call for notice to the public and for public comment," and thus does not trigger VAPA's

contested case requirements); *cf. also* 3 V.S.A. § 814(a) ("When the grant, denial, or renewal of a license is required to be preceded by notice and an opportunity for hearing, the provisions of this chapter concerning contested cases shall apply.").

Here, 18 V.S.A. § 9456(h)(2)(B), the statutory provision that authorizes the Board to issue both prohibitive and remedial budget-enforcement orders, reads in full as follows:

(B)(i) The Board may order a hospital to:

(I)(aa) cease material violations of this subchapter or of a regulation or order issued pursuant to this subchapter; or

(bb) cease operating contrary to the budget established for the hospital under this section, provided such a deviation from the budget is material; and

(II) take such corrective measures as are necessary to remediate the violation or deviation and to carry out the purposes of this subchapter.

(ii) Orders issued under this subdivision (2)(B) shall be issued after notice and an opportunity to be heard, except where the Board finds that a hospital's financial or other emergency circumstances pose an immediate threat of harm to the public or to the financial condition of the hospital. Where there is an immediate threat, the Board may issue orders under this subdivision (2)(B) without written or oral notice to the hospital. Where an order is issued without notice, the hospital shall be notified of the right to a hearing at the time the order is issued. The hearing shall be held within 30 days after receipt of the hospital's request for a hearing, and a decision shall be issued within 30 days after conclusion of the hearing. The Board may increase the time to hold the hearing or to render the decision for good cause shown. Hospitals may appeal any decision in this subsection to Superior Court. Appeal shall be on the record as developed by the Board in the administrative proceeding and the standard of review shall be as provided in 8 V.S.A. § 16.

This provision clearly meets the test for triggering or constituting a "contested case." By use of the mandatory term, "shall," the statute requires the Board to issue budget-enforcement orders "after a notice and an opportunity to be heard." *Id.* Further, the Legislature has not opted to exempt § 9456(h)(2)(B) enforcement orders from the VAPA, like it has done so with respect to other decisions of the Board that are adjudicative in nature. *See* 18 V.S.A. § 9440(a) (exempting from VAPA applications by health care facilities for a certificates of need); *see also* 3 V.S.A. § 816 (exempting particular actions or decisions by several other State agencies).

The Board argues it is entitled to deference in determining whether the VAPA applies to budget adjustment actions. The court disagrees. Judicial deference to an agency's interpretation of its own regulations is due when the plain meaning of the regulation in question is genuinely ambiguous on the precise question at issue, and "'when (1) that agency is statutorily authorized to provide such guidance; (2) complex methodologies are applied; or (3) such decisions are within the agency's area of expertise.'" *In re Morrisville Hydroelectric Project Water Quality*, 2019 VT 84, ¶ 35, 211 Vt. 233 (quoting *In re Korrow Real Estate, LLC Act 250 Permit Amendment Application*, 2018 VT 39, ¶ 20, 207 Vt. 274). However, deference is not due if the agency's interpretation conflicts with its past construction of the same rule without a valid reason or

justification.  *See In re McNamer*, 2024 VT 50, ¶¶ 20-22, 325 A.3d 15.  Further, deference is not owed if the agency's regulations simply "do not address" the precise question or situation at issue.  *Wood v. Wallin*, 2024 VT 21, ¶ 16, 316 A.3d 266.

Deference to the Board's interpretation that the VAPA is not owed because this question is not one within the agency's expertise.  The Board's expertise lies in health care administration and financing, *see* 18 V.S.A. §§ 9372, 9375, and it is in no better position than courts to decide the question whether it must afford the VAPA's procedural protections to an alleged budget violator before issuing budget-enforcement orders under 18 V.S.A. § 9456(h)(2)(B).  Indeed, the VAPA, which was derived verbatim from the Uniform Law Commissioners' Model State Administrative Procedure Act of 1961—a model act containing concepts borrowed from the federal APA—functions very much like a *constitution* for state administrative agencies.  *See* Steven P. Croley, "The Administrative Procedure Act and Regulatory Reform: A Reconciliation," 10 *Admin. L.J. Am. Univ.* 35, 35 (1996) ("Like a constitution, the [federal] APA establishes a set of fundamental ground rules . . . according to which many particularized governmental decisions are made."); Arthur Earl Bonfield, "The Federal APA and State Administrative Law," 72 *Va. L. Rev.* 297, 297 (1986) (early model state APAs "contained many of the general concepts incorporated into the earlier federal act").[4]  The VAPA's formal adjudication requirements are intended to embody and afford "minimum standards of due process necessary for a fair proceeding."  *In re Vt. Health Serv. Corp.*, 155 Vt. 457, 460 (1990).  Judicial deference is not warranted if an agency's interpretation implicates constitutional questions, "for agencies are no better position to resolve constitutional questions than the courts."  *In re Vt. Ry.*, 171 Vt. 496, 500 (2000).  By such logic, the Board is in no better position than the Court to decide whether the VAPA's formal adjudication requirements are "required by law."

This is not to say that agencies, including the Board, are not generally free "to fashion their own rules of procedure and to pursue methods of inquiry capable of permitting them to discharge their multitudinous duties."  *Vt. Yankee Nuclear Power Corp. v. Nat. Res. Def. Council, Inc.*, 435 U.S. 519, 543 (1978).  "[A]dministrative agencies and administrators will be familiar with the industries they regulate and will be in a better position than federal courts or Congress itself to design procedural rules adapted to the peculiarities of the industry and the tasks of the agency involved."  *Id.* at 525 (omitting quotation marks).  But the U.S. Supreme Court declared the above principles in holding that federal courts could not impose procedural requirements on agencies that are above or beyond those required under the federal APA (which requirements had been clearly satisfied by the agency in *Vermont Yankee*).  By contrast, the issue here is whether the Board has expertise relevant to deciding the threshold question—whether it must afford the VAPA's formal adjudicatory procedures to a hospital alleged to be in violation of a budget order.  Courts are as well suited to answer that question as is the Board.[5]

Furthermore, deference is not due because there is no statutory ambiguity and thus, no legislative delegation of authority to the Board on this precise issue.  Judicial deference to an agency's statutory

---

[4] The VAPA was enacted in 1968.  *See* 1967, Act. No. 360 (Adj. Sess.), eff. July 1, 1969.  Its original, core provisions, at 3 V.S.A. §§ 801-16, including the definition of "contested case," were borrowed from the 1961 MSAPA, and with few exceptions these provisions have remained unchanged since enactment.

[5] Substantial deference to the agency might also be in more doubt where, as here, the agency's own interests are implicated in the decision whether the VAPA is triggered.  *See* Michael Asimow, "Contested Issues in Contested Cases: Adjudication Under the 2010 Model State Administrative Procedure Act," 20 *Widener L.J.* 707, 715 n.39 (2011).

interpretation is principally founded on the wide berth that reviewing courts should afford agencies when they are applying their expertise and acting pursuant to the Legislature's grant of policy-making powers and discretion. *See In re Prof'l Nurses Serv. Application For a Certificate of Need*, 2006 VT 112, ¶ 12, 180 Vt. 479 ("In recognition of this broad delegation [under 18 V.S.A. § 9403], we apply a highly deferential standard to [certificate of need] decisions by the Commissioner."); *Hill v. Ari-Mark, Inc.*, 2025 VT 3, ¶ 16, 331 A.3d 1131 ("We defer to agency interpretations of statutes that the Legislature has entrusted them to administer as much out of a concern for the proper separation of powers as in consideration of agency expertise."). Here, as discussed above, the Legislature's command is simple and unmistakable—when issuing an order under 18 V.S.A. § 9456(h)(2)(B), the Board must treat it procedurally as a contested case. That command does not become ambiguous or muted by dint of the Board's view from the outset of a given matter that there is a hospital budget violation that warrants enforcement (rather than retroactive adjustment), or that the best remedy for such violation is through a rate reduction imposed in future budgets.

Moreover, the fact that the statutory hearing provision, 18 V.S.A. § 9456(h)(2)(B)(ii), is found within the Board's enabling statute, rather than the VAPA itself, is not an indication of a legislative delegation of discretion to the Board on the issue of procedural protections. Nothing in Chapter 221 of Title 18 the Legislature intended to exclude budget enforcement actions from the VAPA. If the Legislature intended to exclude the budget adjustment process from the VAPA, they would have done so as they did with other procedures. *See e.g.,* 18 V.S.A. § 9440(a) (exempting from the VAPA applications by health care facilities for a certificates of need).

Even assuming the Board's legal position is due deference in this case, that deference is not absolute. As noted by the Vermont Supreme Court, "deference to an agency's decisions within its area of expertise is not absolute and will not be afforded if the agency fails to provide sufficiently clear guidance on the issue or if the agency's decision is not rational." *Wood v. Wallin,* 2024 VT 21, ¶ 16. The Board's position on this issue is not rational. Taken to its logical conclusion, the position would assume two types or classes of § 9456(h)(2)(B) enforcement orders, with differing levels of procedural protections, depending upon the nature of the remedy sought by the Board. For example, when seeking to issue enforcement orders that are in the nature of immediate prohibitive injunctions, *see* 18 V.S.A. § 9456(h)(2)(B)(i)(I)(aa)-(bb), which are remedies *not* achieved through changes to future budgets, the Board presumably would be obligated to treat the process leading to such order as a contested case. Similarly, when pursuing an order for a corrective measure that may be imposed during a *current* budget cycle, *see* GMCB Rule 3.401(c)(1)—another remedy that is not achieved through changes to future budgets—formal adjudicatory procedures under the VAPA presumably would prevail. However, where, as in the instant case, the Board seeks to impose a corrective remedy through future budgets, the Board need only afford an informal hearing.[6]

Such a regime of differing levels of procedural protections, based solely on the nature of the remedy sought by the Board for a budget violation, finds no support in the governing statute. *See* 18 V.S.A. § 9456(h)(2)(B)(ii) ("Orders issued under this subdivision (2)(B) shall be issued after notice and an opportunity to be heard."). There cannot be a separate "class" or category of alleged violators who are denied procedural protections from the outset, based on the Board's initially untested allegations and presumptions that: (a) a substantial violation has occurred; (b) a retroactive adjustment to a revenue cap is

---

[6] The Board's position also leaves unaddressed the procedural protections that must be afforded a hospital when it requests a retroactive budget adjustment under 18 V.S.A. § 9456(f). Here, such a request was filed, and the Board opted to adjudicate that request through a public hearing.

unjustified; and (c) the best way to remedy the revenue overage is through changes to future budget orders.

The Board's position also ignores the possibility that, through the administrative process leading to the issuance of an enforcement order, the alleged violator may be able to establish that no budget violation actually occurred, or that the violation is insubstantial and not grounds for an enforcement order at all. *Cf.* Policy on Hospital Budget Enforcement, A.R. at 1 ("This review *will not necessarily lead to action* by the [Board]." (emphasis added)). Indeed, an alleged budget violator may be able to justify through the administrative process that it should be given a retroactive upward budget adjustment under 18 V.S.A. § 9456(f), thereby allowing the violator to retain all or a percentage of its revenue surplus. *See* GMCB Rule 3.401(c)(4), (c)(5). That is precisely what the Hospital sought here. Yet, by denying the Hospital contested case procedures under the VAPA, on grounds that the Board has discretion to effectuate corrective remedies through the process of establishing future Hospital budgets, the Board essentially assumed the Hospital's liability and its preferred remedy *before* the administrative enforcement case was even "tried" in front of the Board. Thus, the Hospital was not able to make its case through a formal adjudicatory process.

At oral argument, the Board's counsel correctly observed that 18 V.S.A. § 9456(h)(2)(B)(ii)'s initial key phrase—"opportunity to be heard"—did not precisely match the VAPA's definitional terms, "opportunity for hearing," 3 V.S.A. § 801(b)(2). Citing that distinction, the Board's counsel argued that the VAPA was not triggered by § 9456(h)(2)(B)(ii)'s terms. Following the same logic, when the Court questioned whether an order under 18 V.S.A. § 9456(h)(2)(A), imposing a civil monetary penalty on a hospital for a budget violation, would constitute a contested case, the Board's counsel conceded that it would, since 18 V.S.A. § 9456(h)(2)(A)'s terms—"[a]fter notice and an opportunity for hearing"— contained the exact words found in the VAPA's definition of "contested case." The Court is not persuaded, for a handful of reasons.

First, this statutory interpretation does not appear anywhere in the record, including the Board's Order. Generally speaking, "the Agency decision must stand or fall on the reasons given contemporaneously with the decision and not later revision of those reasons." *Conservation Law Found. v. Burke*, 162 Vt. 115, 128 (1993) (citing *Camp v. Pitts*, 411 U.S. 138, 142 (1973) ("focal point for judicial review should be the administrative record already in existence")). Relatedly, there is no reason to grant deference "to an agency counsel's interpretation of a statute where the agency itself has articulated no position on the question." *Bowen v. Georgetown Univ. Hosp.*, 488 U.S. 204, 212 (1988). Stated differently, even assuming *arguendo* that 18 V.S.A. § 9456(h)(2)(B)(ii) represents and effectuates a legislative delegation of policy-making or interpretative discretion to the Board, judicial deference is inappropriate where, as here, the Board itself has exercised no such discretion. After all, the legislative delegation, if any, was to the independent Board, not to the executive branch agency that represents the Board in this appeal.

However, even assuming this statutory argument could qualify for judicial deference, it is without merit. Its primary flaw is that 18 V.S.A. § 9456(h)(2)(B)(ii), immediately after requiring an "opportunity to be heard," then calls for "a hearing" to be "held" within 30 days, in every instance in which "emergency circumstances" warrant issuance of a § 9456(h)(2)(B) enforcement order prior to notice or a hearing. Thus, a hospital is due a full-blown formal adjudication consistent with the VAPA within 30 days "where the Board finds that [such] hospital's financial or other emergency circumstances pose an immediate threat

of harm to the public or to the financial condition of the hospital," but not where such a finding is not made.[7]

The Board's interpretation assumes two distinct types of alleged budget violators—one whose violations or relevant financial conditions pose an immediate threat of public harm, and one whose violations or conditions do not—with each type of violator enjoying distinct levels of procedural protections. To conclude that the Legislature intended to accord these two classes of budget violators different levels of procedural protections—indeed, to afford *less* protection to the hospital whose alleged violations or relevant conditions were *not* found to pose an immediate threat of harm to the public—is untenable.[8]

Furthermore, there is also a reasonable explanation for the phrase, "opportunity to be heard." The VAPA's formal adjudication requirements are intended to embody and afford "minimum standards of due process necessary for a fair proceeding," *Vt. Health Serv. Corp.*, 155 Vt. at 460, and "'[t]he fundamental requisite of due process of law is the opportunity to be heard.'" *Aiken v. Malloy*, 132 Vt. 200, 209 (1974) (quoting *Grannis v. Ordean*, 234 U.S. 385, 394 (1914)). The wording of the first sentence of 18 V.S.A. § 9456(h)(2)(B)(ii) has no meaningful departure from the VAPA.

Lastly, the supposed distinctions between "opportunity to be heard" and "opportunity for hearing" are unsupported by any decisional authority. The Board has cited no authority for this proposition. The lack of such a case is telling, given that Vermont, and roughly half the States, enacted state administrative procedure acts based on the 1961 MSAPA. This view is consistent with cases from other jurisdictions. *See e.g., Brown v. S.C. Dep't of Health & Envtl. Control*, 560 S.E.2d 410, 418 n.14 (S.C. 2002) (overruling prior decisions that found "opportunity to be heard" insufficient to trigger a right to formal adjudication under state APA containing same definition of contested case).

II. "Legal Rights, Duties, or Privileges of a Party"

The Court next turns to the Hospital challenge to the Board's conclusions that the Hospital had failed to identify or explain any legal right or privilege at stake in the administrative proceeding, and that the Hospital has no "legal right to deviate from" the Board's budget orders.

Regarding the Hospital's supposed failure to explain or articulate any protected legal right, the Board is mistaken. The Board's conclusion ignores that in every written objection filed by the Hospital— from June 12, 2024 through September 20, 2024—the Hospital asserted that it should be able to keep its $11 million revenue overage, or that the Board would be acting contrary to established regulatory criteria

---

[7] Counsel for the Board conceded this conclusion during the argument, agreeing that a formal adjudication would be required when the Board takes an enforcement action against a hospital under "emergency circumstances."

[8] It is likewise unreasonable to conclude that the Legislature intended for hospitals threatened with a civil administrative penalty of $40,000.00 for an alleged past budget violation, *see* 18 V.S.A. § 9456(h)(2)(A), to be due a full-blown VAPA contested case hearing, while another hospital—as in the instant case—could be ordered, on the basis of a past violation, to part with millions of dollars of earned revenue without a prior formal adjudication.

to issue an order taking away that surplus. The last of these objections made the very simple and clear claims of "significant prejudicial impact" and "financial harm," given that "[t]he enforcement action imposes approximately $5.5 million in cuts" in each of two successive budget cycles. A.R. at 2751. The Hospital certainly made allegations that, if accepted as true, would constitute an injury to its financial or economic interests.

The Court is further skeptical why or whether a hospital subject to an enforcement action under 18 V.S.A. § 9456(h)(2)(B) must explain or articulate its protected right, as a precondition to obtaining a formal adjudication. After all, the hospital appears here as the defendant or respondent, and the Board is proceeding as plaintiff or civil enforcer, and the remedy sought is economic in nature, involving funds possessed and owned by the Hospital. Ordinarily, it is not the burden of a defendant or closely-regulated private party to explain its affected legal rights or interests, as a condition of gaining "courthouse" entry, especially where hearing rights are expressed afforded by statute.[9] Further, the Legislature has already recognized, at least by fair implication, that *any* hospital that is subject to a Board order issued pursuant to 18 V.S.A. § 9456(h)(2)(B) is "aggrieved and directly affected by" such order. *Compare* 18 V.S.A. § 9456(h)(2)(B)(ii) ("Hospitals may appeal any decision in this subsection to Superior Court. Appeal shall be on the record as developed by the Board in the administrative proceeding and the standard of review shall be as provided in 8 V.S.A. § 16."), *with* 8 V.S.A. § 16 ("Any person aggrieved and directly affected by an order of the Commissioner may appeal . . . ."). Thus, the Board is insisting on explanations of injuries or deprivations suffered by a regulated hospital—sufficient to grant entry to the Board's "courthouse," in order to formally litigate against and challenge the Board's allegations and proposed actions—that the Legislature has presumed and deemed sufficient for purposes of seeking judicial review of the Board's very same actions.

The Board's claim that the Hospital has no "legal right to deviate from" the Board's budget orders is circular. It assumes a final outcome of the administrative procedure—and an outcome that is adverse to the regulated party—as a means or basis for limiting or controlling the level of procedural protections afforded to that party. Even where, as here, a hospital does not dispute the revenue overage amount that is alleged, the Board's ultimate decision or action is still a matter for adjudication, to be resolved through the mandatory application of regulatory criteria to a developed record. The Board may even decide, based on facts shown, and through the application of relevant factors, *see* GMCB Rule § 3.401(a); 18 V.S.A. § 9456(f), to grant an adjustment and allow "a hospital to retain surplus funds," or "retain a percentage of surplus funds generated primarily by volume in excess of that projected for a particular year." *Id.* § 3.401(c)(4), (c)(5). The Board's rules do not state that if the Board alleges a substantial budget deviation, the Board then enjoys unreviewable discretion to take an action depriving a hospital of such funds. Nor do the rules indicate that, upon an allegation of a substantial revenue deviation, the surplus then necessarily belongs to the Board, or any other entity besides the hospital. As such, there is no merit to the Board's contention that a formal adjudication is not available because a hospital is without a legal right to violate a budget order.

Stepping back, it bears considering that the Hospital, although a non-profit, is still a private corporation. As such, it has rights arising under the common law to use and enjoy revenues and other property within its possession. *See* 1 *Fletcher Cyclopedia of the Law of Corporations* § 31 (Sept. 2024 update)

---

[9] The Hospital sought relief of its own, a retroactive budget adjustment under 18 V.S.A. § 9456(f), but it appears from the Board's regulations that such relief is in the nature of a defense or an exception to an affirmative claim of a substantial revenue overage.

("earnings and profits still in the possession of a corporation belong to the corporation the same as its property generally").  Even closely-regulated commercial entities, such as utilities that provide the public with electrical, gas, water, or telecommunication services, have ownership rights in their earnings that are protected by the Fifth and Fourteenth Amendments.  *See Bluefield Waterworks & Improvement Co. v. Pub. Serv. Comm'n of W. Va.*, 262 U.S. 679, 690 (1923) (remarking that the protected property rights of even closely-regulated industries "are so well settled by numerous decisions of this court that citation of the cases is scarcely necessary").  Viewed in that light, the Board's declaration that the Hospital, thought a private entity, has "no right" to any portion of its earned revenues, and thus no right to due process, is at least surprising.

During oral argument, the Board claimed that the Hospital had waived or failed to preserve its arguments by neglecting to specify, in its opening brief, its particular "legal rights, duties, or privileges" at issue in this matter.  This waiver argument is unavailing.  First, the Hospital properly preserved its position before the Board, by claiming harm to its economic or financial interests.  Moreover, that the Board actually considered the issue below—even if it concluded that there was no protected legal right or interest—further supports the conclusion that the matter was adequately preserved and exhausted.  *See Finnbin, LLC v. Consumer Prod. Safety Comm'n*, 45 F.4th 127, 132 n.1 (D.C. Cir. 2022) (issue preservation and exhaustion requirements are excused "'when the agency has in fact considered the issue'" (quoting *NRCD, Inc. v. EPA*, 824 F.2d 1146, 1151 (D.C. Cir. 1987) (en banc))).

Moreover, the rule that an appellant waives arguments not made in an opening brief is not strictly jurisdictional, but rather a rule to ensure fairness and prevent "sand bagging."  There is no unfairness here.  The Hospital's opening brief argued that "this was a contested case" because "[t]he purpose of the Board's proceedings was to determine [the Hospital's] legal duties after [the Hospital] faced unanticipated demand for its services[.]"  Br. for RRMC at 12.  The Hospital further argued that the Board's legal position—that the Hospital lacked a "legal right to deviate from" the Board's budget orders—"ignores" the fact that the Board weighs "budget-adjustment considerations" when deciding whether to take a budget-enforcement action.  *Id.* at 13.  Such arguments reasonably identified the Hospital's position on the issue.  Indeed, the Board's brief in opposition sought to counter the Hospital's argument, by arguing that because the Board enjoys broad discretion whether to take enforcement actions for a budget violation, "[t]he hospital has no entitlement to any particular corrective action and certainly not entitlement to keep excess unbudgeted revenue."  Br. for GMCB at 12.  As such, the issue was fairly raised and argued, and the Board's counsel understood that the Hospital was claiming an interest in its revenues.  The Court recognizes that the Hospital's reply brief more directly and accurately stated that "RRMC's right to earn revenue [is] undoubtedly one of RRMC's 'legal rights, duties, or privileges,'" but there is no waiver or unfairness here.

In conclusion, the Board's Order was "issued on unlawful authority" as the procedures used did not conform with the VAPA and is therefore reversed.  8 V.S.A. § 16(3).

**ORDER**

The Order of the Green Mountain Care Board, dated October 10, 2024, issued in Board Docket No. 22-012-H (In re: Rutland Regional Medical Center Fiscal Year 2023) is REVERSED. The matter is REMANDED for further proceedings consistent with this decision.

Electronically signed on June 13, 2025 pursuant to V.R.E.F. 9(d)

_____
Alexander N. Burke
Superior Court Judge